THE STATE OF WASHINGTON, *Respondent,* v. RUSSELL
EDWIN WOODALL, ET AL, *Petitioners.*

*Edward B. Shamek,* for petitioners.

*L. Eugene Hanson, Prosecuting Attorney,* for respondent.

DIMMICK, J.—Petitioners were convicted of possession of a controlled substance.[1] Their convictions were based solely on evidence seized under the authority of two search warrants. Petitioners appealed their convictions contending the

---

[1]Petitioners were tried together and their appeals remain consolidated on appeal. RAP 3.3(a).

affidavits given by the police officer in requesting the search warrants were insufficient in that they did not establish the credibility of the officer's informant. The Court of Appeals affirmed the convictions, holding the affidavits were adequate. *State v. Woodall,* 32 Wn. App. 407, 647 P.2d 1051 (1982). We reverse. Due to our disposition of this issue, we need not address the other issues raised by petitioners.

Deputy Golphenee of the Klickitat County Sheriff's Department filed two affidavits and complaints for search warrants. One was for a residence on River Front Street in Klickitat, Washington. The affidavit described the house and stated that the officer believed it to belong to the Shifter's Motorcycle Club. The other affidavit concerned a residence at 505 5th Street. Deputy Golphenee averred in both affidavits that his belief that marijuana would be found in the two houses was based upon the following:

A reliable informant who has proven to be reliable in the past has given information to Duane Golphenee that he/she has been in the house within the last twelve hours and has personally observed marijuana being used in the house. The informant is familiar with the appearance of marijuana.

A district court judge issued two search warrants based on these averments. Officer Golphenee did not supply any other information to the judge. Officers executed both search warrants. Petitioners Brantner, Jackson and Charpentier were arrested at the house on River Front Street after the search revealed a quantity of marijuana. Petitioners Woodall and Lenoir were arrested at the 5th Street house where the officers also found marijuana.

The basic test for probable cause necessary for a judicial officer to issue a search warrant based on information obtained from an informant was established in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). Those requirements are: first, the affiant must set forth the underlying circumstances necessary to permit the magistrate issuing the warrant to inde-

pendently determine that the informant had a factual basis for his allegations; and, second, the affiant must present sufficient facts so the magistrate may determine the credibility or the reliability of the informant. The parties concede that the first prong of the *Aguilar/Spinelli* test was satisfied. It is this second, "veracity", prong which is at issue in this case.

We recognized in *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743 (1982) that

> To meet the *Aguilar/Spinelli* test the credibility of the informant must be demonstrated. The mere statement that an informant is credible is not sufficient (*Aguilar v. Texas, supra*), whereas it is almost universally held to be sufficient if information has been given which has led to arrests and convictions. 1 W. LaFave, *Search and Seizure* § 3.3, at 509 (1978); *see also McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967); *State v. Partin,* [88 Wn.2d 899, 567 P.2d 1136 (1977)].
> This case lies somewhere between these two positions.

This case, like *Fisher,* lies somewhere between the affidavit in *Aguilar* and affidavits stating that information has been given in the past leading to arrests. The affidavit in the instant case is, however, unlike the affidavit at issue in *Fisher* in a very important respect. The affidavit in the instant case presents no underlying facts by which the judicial officer issuing the warrant could independently determine the informant's reliability. The affidavits merely state that the informant is "[a] reliable informant who has proven to be reliable in the past". "Reliable" as used in both instances is a mere conclusion of the affiant which could mean a number of things. There are no facts given to support this conclusion. In contrast, the affidavit in *Fisher* stated facts, although concededly brief. In *Fisher* we held at page 965:

> Affiant stated that the informant had given him information proven to be true and correct in the past. While this is more than drawing the conclusion that the informant is credible and admittedly less than stating the facts as to why the past information has proven to be

"true and correct", it still is a factual statement—not a conclusion of the affiant. We hold in this case that it is enough to enable a neutral magistrate to determine if the informant is credible.

There was some indication at trial that the informant may have had a "track record" with another sheriff's department. If true, the affiant could have included such facts in the affidavits to support his conclusion of the informant's reliability. *See Keller v. State,* 543 P.2d 1211 (Alaska 1975). This was not done, however, nor was any other indicia of reliability related. *Cf. United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971); *State v. Lair,* 95 Wn.2d 706, 630 P.2d 427 (1981) (statements made were against the informant's penal interest).

We are mindful of the State's concern that it not be required to supply to the magistrate such facts that could reveal the informant's identity thus endangering the informant or rendering him useless in future investigations. However, the minimum requirements of *Aguilar/Spinelli,* as applied in *Fisher* and other cases, must be complied with in order to maintain the integrity of search warrants. The judicial officer must be given sufficient facts, not mere conclusions, in order to perform his "'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar,* at 111. Although the officer commendably chose to seek a search warrant in this case, the affidavits presented by him did not supply any facts establishing the credibility of the informant.

Professor LaFave analyzed statements such as the one in the instant affidavits. He states:

an assertion that the informant is reliable leaves totally undisclosed the basis on which that judgment was made, while an assertion that the informant was reliable in the past or that his past information was reliable at least indicates that the judgment is based upon the informant's past performance. But the critical fact is that it leaves the nature of that performance undisclosed, so that the judicial officer making the probable cause deter-

mination has no basis for judging whether the officer's characterization of that performance is justified. . . .

As one perceptive commentator has noted:

. . .

The "reliable information in the past" recital * * * lacks any factual indication of how reliable the informer is. The magistrate is, in effect, relying upon the factual determination of the arresting officer that the informer is sufficiently reliable, and not upon his own independent judicial determination. This does not square either with the *Aguilar* demand for "underlying circumstances" or with the requirement that the essential facts supporting the assertion of probable cause be made known to the reviewing magistrate. Where reliability is important, the facts supporting reliability are as essential as any others to a showing of probable cause. With such facts, the magistrate can challenge the reasonableness of the officer's belief in his informer's reliability.

(Footnotes omitted.) 1 W. LaFave, *Search and Seizure* § 3.3, at 516–17 (1978).

The affidavit here falls short of the *Aguilar/Spinelli* standards. In holding as we do, we do not retreat from the established propositions that search warrants must be tested in a commonsense manner rather than hypertechnically and that doubts should be resolved in favor of the warrant. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977). We cannot, however, sustain this warrant without diluting the underlying safeguards that a neutral judicial officer, not the police officer, should determine probable cause.[2]

---

[2]After this opinion was written the United States Supreme Court decided *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), wherein the Court disapproved of rigid adherence to the test developed under *Aguilar* and *Spinelli.* The Court substituted therefor a "totality of the circumstances" test. Pursuant to this test the magistrate makes a practical, commonsense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The task of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. The conclusory affidavit provided to the magistrate in the instant case was inadequate under any test.

We reverse petitioners' convictions.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACH-TENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.